Kulik Gottesman Siegel & Ware, LLP
Kirk Edward Schenck, Esq.   CA State Bar #: 173963
15303 Ventura Boulevard, 14th Floor
Los Angeles, California 91403
direct dial telephone: 310-600-3800
email: kschenck@kgswlaw.com

Attorneys for Plaintiff,
The Ivy Coach, Inc.

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

THE IVY COACH, INC., a New York Corporation,

Plaintiff,

vs.

COLLEGE-CONNECTIONS, INC., a California Corporation, JEANNIE BORIN, an Individual, TIER ONE TUTORS, INC., a California Corporation, and DOES 1 through 100, inclusive,

Defendants

**CASE NO: 2:17-CV-4886**

**COMPLAINT FOR:**

1.  **DIRECT COPYRIGHT INFRINGEMENT, 17 U.S.C. §101, et seq.;**
2.  **VIOLATION OF THE DIGITAL MILLENNIUM COPYRIGHT ACT, 17 U.S.C. §1202, 1203; and**
3.  **VICARIOUS COPYRIGHT INFRINGEMENT, 17 U.S.C. §101, et seq.**

**REQUEST FOR JURY TRIAL**

The Ivy Coach, Inc. ("Ivy Coach") hereby alleges as follows:

### NATURE OF THE ACTION

1. Ivy Coach is a private college admissions counseling company serving college-bound students from North America and around the world.

2. On or about August 13, 2004, Ivy Coach's owner, Bev Taylor ("Taylor") wrote and published a detailed article entitled *"How Applications are Evaluated and Decisions are Made"* (the "Original Article") in which Ivy Coach and Taylor detailed their unique, original and proprietary model for advising students facing the often daunting task of creating the best possible college application package. The Original Article featured prominently the following Copyright Management Information[1]: "By Bev Taylor""Copyright (c) 2004, Ivy Coach, Inc.," and "ALL RIGHTS RESERVED." A true and correct copy of the Original Article is attached hereto and incorporated herein as Exhibit "A." The Original Article was authored by Taylor as a work for hire specially commissioned by, and prepared for, Plaintiff Ivy Coach. Ivy Coach was and is at all times the copyright owner of the Original Article.

3. The Copyright Registration for the Original Article by Ivy Coach was filed and processed prior to the date of filing this Complaint.

4. Ivy Coach's intended purposes for commissioning and publishing the Original Article were (a) to detail the unique twelve-point college consulting methodology (the "Ivy Coach Method") it employs with its clients while rendering consulting services and (b) to solicit the Original Article's readers to contact Ivy Coach should they desire private college counseling services and wish to implement the Ivy Coach Method in the college admissions

---

[1] "Copyright Management Information" shall be defined in accordance with its definition in THE LANHAM ACT § 43(a), 15 U.S.C. § 1125(a) and 1202(c)(1)-(3), (6).

process.  Ivy Coach has always sought to separate itself from its competition and its creation, promotion, and commercial use of the Ivy Coach Method has set it apart from its competitors and provides it with a competitive advantage.

5. Defendants College-Connections, Inc. ("College-Connections"), Jeannie Borin ("Borin") and Tier One Tutors, Inc. ("Tier One") are direct competitors of Ivy Coach and Taylor in the private college admissions and test prep tutoring advisory business.

6. Commencing on or about February 16, 2016, College-Connections and Borin infringed Ivy Coach's copyright in and to the Original Article by: (a) intentionally creating a copy of the Original Article (the "Copied Article") with the exact same text without Ivy Coach's authority or permission; (b) entitling the Copied Article with the identical title as the Original Article: "How Applications are Evaluated and Decisions are Made;" *and* (c) intentionally and knowingly publishing the Copied Article for commercial advertising purposes after having removed Ivy Coach's Copyright Management Information and failing to provide Ivy Coach or Bev Taylor with any creator attribution.  Each of these acts and omissions were committed as part of College-Connections and Borin's advertising and marketing campaign to solicit new clients.

7. Defendants College-Connections and Borin then colluded with Tier One, and others, to continue the aforementioned copyright infringement for commercial purposes, with each deriving profits and other commercial benefits therefrom.  Ivy Coach has been damaged, and each of College-Connections, Borin and Tier One have been unjustly enriched, by each of their various acts or omissions as alleged herein.

## JURISDICTION AND VENUE

8. This is a civil action seeking damages and injunctive relief for copyright infringement under the Copyright Law of the United States (17 U.S.C. §§ 101 et seq.), and the Digital Millennium Copyright Act (17 U.S.C. §§ 512 et seq.). The Court has subject matter jurisdiction over this action by virtue of the provisions of 28 U.S.C. Section 1332, in that there is complete diversity of citizenship between the parties and the amount in controversy exceeds the sum of $75,000 exclusive of interest and costs.

9. This Court has jurisdiction of this action under 17 U.S.C. §§ 101 et seq. (Copyright Claims) and 28 U.S.C. §§ 1338(a) and (b).

10. This Court has personal jurisdiction over defendants in that defendants reside in and/or are doing business in the State of California and in this District. In addition, many of the acts of infringement and unfair competition complained of herein occurred in the State of California and in this District.

11. Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(b) and (c).

## AVERMENTS COMMON TO ALL COUNTS
## THE PARTIES

12. The Ivy Coach, Inc. ("Ivy Coach") is a corporation duly organized and existing under the laws of the State of New York, with its principal place of business in New York City, New York. It is duly qualified to, and in fact does, transact business in Los Angeles, California. Bev Taylor ("Taylor") is, and at all times relevant hereto was, an employee of Ivy Coach.

13. Defendant College-Connections, Inc. ("College-Connections") is a corporation duly organized and existing under the laws of the State of California, with its principal place of business in Los Angeles, California. It is duly qualified to, and in fact does, transact business in Los Angeles, California.

14. Defendant Jeannie Borin ("Borin") is an individual and employee and/or owner of Defendant College-Connections, residing and transacting business in Los Angeles, California.

15. Defendant Tier One Tutors, Inc. ("Tier One") is a corporation duly organized and existing under the laws of the State of California, with its principal place of business in Los Angeles, California. It is duly qualified to, and in fact does, transact business in the State of California.

16. The true names and capacities, whether individual, corporate, associate, or otherwise, of all defendants sued herein as Does 1 through 100, are unknown to plaintiffs, who therefore sue said defendants by such fictitious names. Ivy Coach will seek leave of Court to amend this Complaint to state their true names and capacities when the same have been ascertained. Ivy Coach is informed and believes and on that basis allege that said defendants are liable to plaintiffs as a result of their participation in all or some of the acts hereinafter set forth.

17. Ivy Coach is informed and believes and on that basis alleges that at all times mentioned in this Complaint, each of the defendants was (a) the agent, servant, employee, partner, joint venturer, or surety of each and all of the other defendants unless otherwise specified, *and* (b) acting within the scope of this agency, employment, partnership, joint venture, or suretyship and with the knowledge, consent or ratification of each of the other defendants in taking the acts or omissions alleged herein. Unless otherwise specified, the word "Defendant" shall be used herein to refer to all defendants (including those named as Does 1-100) in this action jointly and severably.

## THE IVY COACH METHOD

18. Taylor founded Ivy Coach in the early 1990's, and has been a respected leader in the field of college advisory services ever since.

19. Taylor and Ivy Coach revolutionized the college advising industry by creating and implementing unique, first-of-their-kind counseling methodologies that afford college applicants a distinct advantage in achieving admission to the universities of their choice.  Ivy Coach is and has always been a commercial business that operates separate from the client-applicant's "in house" high school college adviser.  Through Taylor's hard work, Ivy Coach is now considered one of the most successful and well-respected college advising companies not only in the North America, but throughout the world.

20. While the college admissions counseling industry was once controlled exclusively by high school-supplied counselors, private college admissions counseling has evolved into a global business. With the advent of web-based communication in the last 20 years, the college admissions counseling business has become a national and international business.  Companies like Ivy Coach, with its principle place of business in New York City, and College-Connections, with its principle place of business in Los Angeles, California, can work not only with clients living in North America, but around the world.  Yet, the competition for highly coveted clients willing and able to pay for private college admissions counseling has always been tough and the companies involved in the business have become quite competitive.

21. While much of Ivy Coach's business has been driven by word of mouth from other college admissions professionals familiar with the Ivy Coach Method, or satisfied former students (and their parents) who successfully worked with Ivy Coach to implement the Ivy Coach Method to their advantage, since the advent of the Internet and "editorial marketing," Ivy Coach became a pioneer in publishing articles that are not only informative, but that are also designed to advertise and solicit prospective students and their parents

to contact Ivy Coach for consulting services.  These articles are often referred to as "Advertorials" or "Native Advertising."

22. Using the power of the newly popularized Internet as early as 1998, Taylor and Ivy Coach began publishing articles, editorials and other original written materials that explained or highlighted the Ivy Coach Method in order to de-mystify the complex process of college admissions, and to provide contact information with links to the Ivy Coach web-site at www.ivycoach.com and Taylor's email in order to solicit clients to contact them directly for paid college counseling services.

23. Over the last twenty years, Ivy Coach has spent a significant amount of time, money and corporate resources advertising, promoting and publicizing its unique strategies reflected in its original twelve-part Ivy Coach Method.

24. The purpose of the Original Article, entitled *"How Applications Are Evaluated and Decisions are Made,"* was to explain the Ivy Coach Method. The Ivy Coach Method as outlined in the Original Article comprises a comprehensive set of specific strategies in twelve specific areas of focus: (1) Academic Criteria (Academic Success in High School); (2) Talent (Unique to Student); (3) Legacy (Connections); (4) Ethnicity (Diversity); (5) Geographic - A student from Nebraska may be the only one applying to Dartmouth College and if the admissions counselors at Dartmouth are looking to form a freshmen class of students representing all fifty states, that student will have an edge in the admissions process; (6) Socioeconomic; (7) Early Decision / Early Action; (8) Interest Quotient (IQ) (a specific term coined by Bev Taylor); (9) Declared Major; (10) Activity Record; (11) The Interview; *and* (12) Essays.  Ivy Coach's success over the years has been driven by its requirement that its students (and their parents) work within the Ivy Coach Method to enable the applicant to evolve from a set of grades and

1   scores into a singularly talented, fully-prepared and (hopefully) successful

2   college applicant.

3   25. Whether it was posting blogs, publishing articles for college counseling

4   newsletters, admissions websites, newspapers, or magazines, Ivy Coach

5   sought to harness the power of the web and other publishing outlets to

6   promote and advertise its success with the Ivy Coach Method to clients in

7   local, national and international markets.  Ivy Coach did what many other

8   business and professional consultants have done for years, it solicited

9   publication of its articles by news outlets and websites frequented by a

10  specific target demographic — eager college bound students and their

11  equally anxious parents.  In addition to publishing articles on the Ivy Coach

12  website blogs, Ivy Coach published materials in, without limitation, The

13  Huffington Post, Unigo, Peterson's, and Varsity Tutors.

14  26. By writing and publishing, Ivy Coach carefully and painstakingly built its

15  online promotional brand.  Its reputation benefited from this outreach and

16  the Ivy Coach Method became a successful and well known marketing tool

17  for Ivy Coach and Taylor.  While positive word-of-mouth reviews kept

18  "friends of friends" coming to Ivy Coach, its editorial publishing efforts

19  promoting the Ivy Coach Method brought Ivy Coach many new clients who

20  would reach the company directly based on the affixed Copyright

21  Management Information and other contact information for Ivy Coach and

22  Taylor included in, or affixed to, each article.

23  27. Ivy Coach became a global business, capable of working with students and

24  parents via Skype, Internet, email and telephone from anywhere in the

25  world.  While there were many competitors, Ivy Coach never compared

26  itself to anyone, never copied other companies' strategies, and never

27  challenged or critiqued any other college advisor's style or marketing

28  strategies.  Ivy Coach sought to be known as an original voice in a

competitive sea of college advisors who just "processed" applications.  Ivy Coach's reputation grew along with its success in tailoring its Ivy Coach Method to each student's specific needs and attributes.

28. On or about August 14, 2004, as part of the above-referenced process of building and promoting its brand, Ivy Coach published the Original Article on its website www.ivycoach.com (the "Ivy Coach Website").  The Original Article was written and specially prepared as a "work for hire" for Ivy Coach by its author Taylor.  The Original Article laid out, with specific headings, the twelve-point Ivy Coach Method and the details of the college admissions consulting model implemented by Ivy Coach as part of its day-to-day business model.

29. As with all articles published by Ivy Coach on its Ivy Coach Website, or elsewhere, at the end of the article as it appeared on screen, or as printed, was a direct link to Ivy Coach's website and Taylor's email and other direct contact information.  The publication of the Original Article prominently featured the following Copyright Management Information: "Copyrighted (c) 2004, by Ivy Coach, Inc. ALL RIGHTS RESERVED" and listed its publication date (August 14, 2004) and author (Bev Taylor).

30. The Original Article, its title, its author credit, and the aforementioned Copyright Management Information were published on the Ivy Coach's website, which was accessible by anyone with access to the internet including Defendants.  The Original Article has been "live" on the Ivy Coach Website, and accessible to anyone with internet access, ever since.

31. Rather than spend the time and resources to devise unique consulting strategies, write and publish original editorial marketing materials, and submit such articles to well-respected newspapers, blogs and websites known to attract educated, college bound students, Defendants College-Connections and Borin elected to copy, and market as their own, both the

1   Ivy Coach Method, and the published written expression thereof in the form
2   of the Original Article.  In doing so, they sought to pass off the contents of
3   the Original Article as their own creation.

4   32. It was well known in the college consulting community that Ivy Coach was a
5   market leader.  So, if Ivy Coach's articles were driving new clients to Ivy
6   Coach, Defendants College-Connections and Borin likely assumed if they
7   copied and published Ivy Coach's materials verbatim, removed Ivy Coach's
8   Copyright Management Information indicating they were the rightful
9   copyright owner and author, replaced Ivy Coach/Taylor's social media
10  contacts with their own, and inserted College-Connections as copyright
11  owner and Borin as author — they could cheaply and quickly divert many
12  potential clients from Ivy Coach to College-Connections.

13  33. Commencing in or about 2007, Defendants College-Connections and Borin's
14  copying Ivy Coach's copyrighted works began in earnest — and it continues
15  to this day.

16  34. In or about December 2006 and January 2007, Ivy Coach discovered that
17  College-Connections had copied specific, unique, copyrighted elements
18  from the "description of services" pages on the Ivy Coach Website, and
19  included them verbatim onto the College-Connections website.

20  35. On or about February 13, 2007, Ivy Coach notified Defendants College-
21  Connections and Borin in writing of these copyright violations and,
22  assuming they would not occur again and reserving all rights, decided to let
23  the matter go.  But, in 2012 Ivy Coach once again found several new
24  instances in which College-Connections and Borin copied verbatim other
25  copyrighted elements directly from the Ivy Coach Website.

26  36. Each time Ivy Coach discovered Defendants College-Connections and Borin
27  infringing its copyrighted works, Ivy Coach representatives would confront
28  Borin.  Each time Borin would admit her mistake, apologize in writing, and

assure Ivy Coach the plagiarizing was an inadvertent oversight.  Borin
would ultimately agree to take down the copied works and to try to
implement procedures to ensure this would not happen again.

37. But the copyright infringement did not stop. What might have been a
mistake once, maybe twice, became what can only be described as an
intentional, inexcusable pattern and practice of anti-competitive commercial
conduct all perpetrated in an effort to promote, advertise and market the
College-Connections' brand and Borin's services, and to divert potential
customers away from Ivy Coach and Taylor.

**COLLEGE CONNECTION AND BORIN COPY THE
"ORIGINAL ARTICLE" AND PASS IT, AND THE IVY COACH
METHOD, OFF AS THEIR OWN CREATION**

38. As part of her above-referenced pattern and practice, commencing on or
about February 16, 2016, Jeannie Borin, operating as an employee and/or
owner of College-Connections, (a) copied and published the "Original
Article" — its title and every word therein — verbatim, (b) changed the
author's name from "Bev Taylor" to "Jeannie Borin," (c) removed the
Copyright Management Information affixed to the Original Article and
replaced it with fictitious and fraudulent Copyright Management
Information, *and* (d) published the Original Article as a new article
(hereafter the "Copied Article") in, without limitation, *The Huffington Post*
web-newspaper (see *www.huffingtonpost.com*), on the College-Connections
advertising and marketing website (see *www.college-connections.com)*, and
on the Tier One advertising and marketing website (see *http://
www.tieronetutors.com/how-applications-are-evaluated-and-decisions-are-
made/)* in a directed effort to promote and advertise College-Connections
and Jeannie Borin's own college advising business.

39. Where the Original Article had advertising and social media links to Ivy Coach, the Ivy Coach Website, and to Taylor's email address, the Copied Article welcomed all readers / prospective clients who may have liked the contents of the Copied Article, and/or who wanted to implement the Ivy Coach Method, to contact College-Connections and Borin for all of their college advising needs.

40. College-Connections and Borin's most recent acts of plagiarism began on or about February 16, 2016, and they continue to this day — severely damaging Ivy Coach's reputation, its ability to generate profits, and its ability to retain an undiluted association with the Ivy Coach Method. Current, former, and prospective clients seeking college advising consultation, who had come to associate the Ivy Coach Method with Ivy Coach and Taylor, were now being misled with fraudulent and misleading advertising statements regarding corporate origin and individual authorship including that: (a) the twelve-part Ivy Coach Method was College-Connections and Borin's work product; (b) the Ivy Coach Method could be best accessed and implemented through engaging College-Connections' services; *and* (c) the detailed and copyrighted description of the Ivy Coach Method contained in the Copied Article was written by Jeannie Borin, its labeled author, and its origin should be associated with her company, College-Connections.

41. When College-Connections and Borin copied the Original Article's exact contents, passing them off as an original article written by Borin and describing their consulting methodology, they did not do so for a newsworthy or educational purpose, or to discuss a topic of public importance. Rather, in the course of conducting their business operations, they copied the Original Article, replaced Ivy Coach's name with College-Connections', and Bev Taylor's name with Jeannie Borin, and then

published it as the "Copied Article" in a web-based newspaper, The Huffington Post, and at least two other marketing websites including their own, for commercial purposes designed to market and promote College-Connections and Borin's services.

42. When Ivy Coach made contact with College-Connections and Borin first in 2007 and then in 2012 notifying them of their past copyright infringement and other anti-competitive activities and their negative impact on Ivy Coach, Ivy Coach made it clear that no such acts were (or ever going to be) authorized or permitted.

43. Defendants College-Connections and Borin published the "Copied Article" in The Huffington Post in 2016 without any permission, license or consent from Ivy Coach, or its employees, agents or representatives.

## DEFENDANT TIER ONE TUTORS

44. Ivy Coach is informed and believes and thereon alleges that, as part of a broader effort to advertise and market College-Connections, Borin entered into a strategic alliance or other form of joint venture with Tier One.

45. Tier One's primary commercial activities relate to tutoring services for students in connection with general academic matters and preparation for the SAT, ACT and other college and graduate admissions testing.  Ivy Coach, in addition to college admissions advising, also provides SAT, ACT and all other forms of academic tutoring and as such, is a direct competitor to Tier One.

46. As part of their commercial relationship, College-Connections and Borin agreed to promote and refer clients to Tier One and its businesses, and Tier One agreed to do the same for College-Connections and Borin.  As part of this relationship, on or about March 14, 2016, College-Connections and Borin encouraged, enabled or otherwise caused Tier One to publish, and Tier One did publish, the "Copied Article" on the Tier One marketing website

(see *http://www.tieronetutors.com/how-applications-are-evaluated-and-decisions-are-made/*) (the "Tier One Website"). College-Connections, Borin, and Tier One colluded to, and did, infringe Ivy Coach's copyrights in the Original Article by publishing the Copied Article with College-Connections and Borin's name as the author, copyright owner and originators of the contents of the Copied Article. Adjacent to the versions of the Copied Article published on the Tier One Website are contact and solicitation references to College-Connections, Borin and Tier One. Once again, in publishing the Copied Article on the Tier One Website, Borin and Tier One removed Ivy Coach's original Copyright Management Information and replaced it with Borin and College-Connections' own misleading and fraudulent Copyright Management Information.

## COLLEGE CONNECTIONS AND BORIN'S INFRINGEMENT COMPRISED COMMERCIAL ADVERTISING LANGUAGE

47. The "College" section on The Huffington Post website, and the College-Connections and Tier One Websites, all specifically target college-bound readers and their parents. When College-Connections and Borin published the Copied Article on the College-Connections, The Huffington Post and the Tier One websites, they did so with the intent and desire that it be read by millions of potential college applicants (and/or their parents) who would come to associate the twelve-point Ivy Coach Method with College-Connections (Borin) brand as opposed to that of its true creator, Ivy Coach (and Taylor). Their goal in each instance was to advertise to, and solicit, a targeted demographic of potential clients desiring college admissions consulting services from the company that was purporting to have created the Ivy Coach Method and the Copied Article. Their goal was to divert potential customers from Ivy Coach, to College-Connections. This is exactly what occurred.

48. On or about August 1, 2016, Ivy Coach sent College-Connections and Borin a letter (the "Cease and Desist") in which it demanded College-Connections and Borin stop infringing its copyright in and to the Original Article and making false representations that they were the creators of, or in any way associated with, the twelve-point Ivy Coach Method outlined in the Copied Article.

49. After the Cease and Desist letter was sent, Borin admitted in written communications sent to Ivy Coach that she had in fact accessed and infringed the copyright in Ivy Coach's Original Article in her advertising and promotion efforts on the College-Connections, The Huffington Post and Tier One websites. Yet at no point did College-Connections or Borin take any action to correct the record publicly in a manner equivalent in scope and effect to their original advertising language and to retract the Copied Article from The Huffington Post or the Tier One websites.

50. Ivy Coach was forced to contact The Huffington Post on August 2, 2016 to demand it remove the Copied Article from its archived web pages. The Article's body was removed but as of the date of filing this Complaint, the title of the Copied Article still appears as an archived article on The Huffington Post, indicating it was authored by Borin.

51. As of the date of filing this Complaint, the Copied Article still appears on the Tier One Website, soliciting all readers to contact College-Connections and Borin should they require college advising services from the person and entity that "authored" the Copied Article.

//
//
//
//
//

## COUNT I

### DIRECT INFRINGEMENT OF COPYRIGHT

### (17 U.S.C. §§ 106 and 501)

**By Ivy Coach Against Defendants College-Connections and Borin**

52. Ivy Coach incorporates herein by this reference each and every averment contained in paragraphs 1 through 51, inclusive.

53. Through their conduct averred herein, each of Defendants College-Connections and Borin directly infringed Ivy Coach's copyright in the Original Article in violation of Sections 106 and 501 of the Copyright Act, 17 U.S.C. §§ 106 *et seq.* and 501.

54. Ivy Coach Registered the copyright for the Original Article in accordance with the Copyright Act prior to filing this Complaint.  The contents of the Original Article are copyrightable subject matter under the Copyright Act, 17 U.S.C. §101 et seq, and were not, and have never been, in the public domain.

55. As of August 4, 2004, Ivy Coach owned, and had exclusive control to, the copyright in and to the Original Article and its elements including the detailed outline of The Ivy Coach Method.  At no point has Ivy Coach ever licensed or otherwise granted to any third party any consent, permission or other right to commercially exploit any element of the Original Article or The Ivy Coach Method.

56. Defendants College-Connections and Borin infringed the copyrights in and to Ivy Coach's Original Article when commencing on or about February 16, 2016 (on the College-Connections and The Huffington Post websites) and March 14, 2016 (on the Tier One website) they copied verbatim, reproduced, distributed and publicly displaying the title and text of the Original Article, without approval or authorization of Ivy Coach in violation of the Copyright Act, 17 U.S.C. 106 et seq., and 501.

57. Defendants College-Connections and Borin knew the Original Article belonged to Ivy Coach as all lawfully published copies of the Original Article prominently displayed Ivy Coach's original Copyright Management Information.

58. Ivy Coach is informed and believes and on that basis alleges Defendants College-Connections and Borin's acts of infringement by, without limitation, copying verbatim, reproducing, publishing and exploiting for commercial gain the Original Article in the form of the Copied Article as a means to advertise and promote their business as alleged herein were willful, intentional and purposeful within the meaning of the Copyright Act, and in disregard of and with indifference to Ivy Coach's exclusive rights.

59. As a result of their wrongful conduct, College-Connections and Borin are liable to Ivy Coach for copyright infringement pursuant to 17 U.S.C. § 501 and Ivy Coach is entitled to recover damages, which include its losses and any and all profits Defendants have made as a result of its wrongful conduct pursuant to 17 U.S.C. § 504. As a direct and proximate result of Defendants College-Connections and Borin's infringement, Ivy Coach is entitled to damages in an amount to be proven at trial.

60. Ivy Coach has suffered, and will continue to suffer, substantial losses including, but not limited to, damage to its business reputation and goodwill.

61. Ivy Coach is entitled to Defendants College-Connections and Borin's unjust profits, gains and advantages attributable to the alleged infringement, pursuant to 17 U.S.C. § 504(b), including an accounting of and a constructive trust with respect to such profits.

62. Defendants College-Connections and Borin will likely continue to realize unjust profits, gains and advantages as a proximate result of their ongoing infringement as alleged herein if each is not prohibited by this Court from continuing their infringing activities.

63. As a direct and proximate result of the foregoing alleged acts and conduct, Ivy Coach has sustained and will continue to sustain substantial, immediate, and irreparable injury, for which there is no adequate remedy at law. Ivy Coach is informed and believes and on that basis alleges that unless enjoined and restrained by this Court, during the pendency and following the disposition of this action, Defendants College-Connections and Borin will continue to infringe Ivy Coach's rights in the Original Article. Accordingly, Ivy Coach is entitled to preliminary and permanent injunctive relief to restrain and enjoin Defendants' continuing infringing conduct.

## COUNT II

## VIOLATION OF THE DIGITAL MILLENNIUM COPYRIGHT ACT

## (17 U.S.C. §1202, 1203)

### By Ivy Coach against Defendants College-Connections and Borin

64. Ivy Coach incorporates herein by this reference each and every averment contained in paragraphs 1 through 51, inclusive.

65. The Original Article is an original work of authorship subject to the full protection of the United States copyright laws.

66. Ivy Coach is the sole and exclusive owner of all rights, title, and interest in and to the copyrights in the Original Article.

67. The Original Article contained Copyright Management Information as defined in 17 U.S.C. § 1202(c)(1)-(3), (6), including: the title and other information identifying the work; the name of, and other identifying information about, the author of the work; the name of, and other identifying information about, the copyright owner of the work; and the terms and conditions for use of the work.

68. Ivy Coach published the Original Article on August 4, 2004 including the following well-delineated and prominently displayed Copyright Management Information: (a) Ivy Coach's title for the work; (b) an

identification of "Bev Taylor" as the author or creator of the work; (c) "Copyright (c) 2004 Ivy Coach, Inc.," (d) a conspicuous link to the Ivy Coach's and Bev Taylor's main website and other social media pages, which provides information indicating Ivy Coach's intention to be contacted with any inquiries into the Original Article; *and* (e) a rights advisory indicating "ALL RIGHTS RESERVED" signifying Ivy Coach's intention that the Original Article may not be used by any third party without first obtaining prior consent.

69. In violation of 17 U.S.C. § 1202(b), in publishing the Copied Article on the College-Connections, The Huffington Post and the Tier One websites as alleged herein, Defendants College-Connections and Borin intentionally removed or altered the prominently displayed Copyright Management Information in the Original Article, knowing or having reasonable grounds to know that doing so would induce, enable, facilitate, or conceal an infringement of a right under Title 17 of the United States Code. At no point did Ivy Coach ever consent to, or otherwise implicitly or expressly authorize, such acts or omissions.

70. In violation of 17 U.S.C. § 1202(a), Defendants College-Connections and Borin, knowingly and with the intent to induce, enable, facilitate, or conceal infringement, have included Copyright Management Information in the Copied Article that is false by removing Ivy Coach's original Copyright Management Information, and replacing it with misleading and fraudulent Copyright Management Information including, without limitation, notices of copyright, authorship and origination by Defendants College-Connections and Borin.

71. In violation of 17 U.S.C. § 1202(a), Defendants College-Connections and Borin, knowingly and with the intent to induce, enable, facilitate, or conceal infringement, have distributed Copyright Management Information in the

Copied Article that misleads readers and consumers of the Copied Article that the Copied Article and the Ivy Coach Method was written by Borin, when in fact it was written by Bev Taylor and owned by Ivy Coach.

72. In violation of 17 U.S.C. § 1202(b), Defendants College-Connections and Borin, without the authority of the copyright owner, have distributed on the College-Connections, the Huffington Post and the Tier One websites false Copyright Management Information when copying the Original Article knowing that said Copyright Management Information was altered without authority of the rightful copyright owner, knowing or having reasonable grounds to know that doing so would induce, enable, facilitate, or conceal an infringement of any right under Title 17 of the United States Code.

73. Defendants College-Connections and Borin have misrepresented the terms of use of the Original Article, which is another example of providing false Copyright Management Information.

74. Ivy Coach is a "person injured" by Defendants College-Connections and Borin's violations of Section 1202, thereby qualifying it as a person who may bring a civil action for such violations under Section 1203.

75. As a direct and proximate result of the infringements by Defendants College-Connections and Borin's, Ivy Coach is entitled to damages equal to Defendants College-Connections and Borin's income generated from such infringing acts or omissions in amounts to be proven at trial and which are not currently ascertainable.

## COUNT III

### VICARIOUS INFRINGEMENT OF COPYRIGHT
### (17 U.S.C. §§ 106 and 501)

### By Ivy Coach Against Defendant Tier One Tutors, Inc.

76. Ivy Coach incorporates herein by this reference each and every averment contained in paragraphs 1 through 51, inclusive.

77. Through its conduct as averred herein including, without limitation, its knowing, willful and purposeful publication of the Copied Article on its exclusively owned and operated website, Defendant Tier One is vicariously liable for (a) copyright infringement of the Original Article under 17 U.S.C. §§ 106 and 501, and (b) violation of the Digital Millennium Copyright Act under 17 U.S.C. §1202, 1203.

78. Defendant Tier One has, and at all times had, (a) the right and ability to supervise and control what matter and works were published on its Tier One Website, *and* (b) the right and ability to supervise and control infringing conduct of Defendants College-Connections and Borin as alleged herein in connection with the publication of the Copied Article on the Tier One Website.

79. Alternatively, Defendant Tier One failed, or refused, to exercise sufficient supervision and control over the Tier One Website to the extent required by the law because, on or about March 14, 2016, the Tier One Website did in fact commence its ongoing publication of the Original Article in the form of the Copied Article without Ivy Coach's or Taylor's permission or consent.

80. As a direct and proximate result of Tier One's acts or omissions as alleged herein, Defendant Tier One has violated Ivy Coach's exclusive copyright in the Original Article by, without limitation, displaying, publishing, copying, distributing, and commercially exploiting the title and text of the Original Article without Ivy Coach's authorization in violation of the Copyright Act, 17 U.S.C. 106 et seq., and 501.  Additionally, as a direct and proximate result of Tier One's acts or omissions as alleged herein, Defendant Tier One has violated Ivy Coach's exclusive rights in and to the Copyright Management Information that was affixed to and incorporated into the Original Article pursuant to 15 U.S.C. § 1125(a) and 1202(c)(1)-(3), (6).

81. Defendant Tier One drew new clients to itself and College-Connections, and otherwise derived a direct financial benefit, as a result of the act of publishing, or permitting the publication of, the Copied Article on the Tier One Website in violation of Ivy Coach's exclusive rights under the Copyright Act and the Digital Millennium Copyright Act.  As a result, Tier One reaped, without limitation, advertising revenues, increased website traffic, and new client consulting fees and referral fees from College-Connections and Borin as a result of its publication of the Copied Article on the Tier One Website.

82. Defendant Tier One's acts and omissions of vicarious copyright infringement as alleged herein were willful, and in flagrant disregard of, and with indifference to, Ivy Coach's exclusive copyrights in the Original Article.

83. As a direct and proximate result of the vicarious copyright infringements by Defendant Tier One as alleged herein, Ivy Coach is entitled to damages equal to Defendants' income generated from such infringing acts or omissions in amounts to be proven at trial and which are not currently ascertainable.

84. As a direct and proximate result of the foregoing acts and omissions, Ivy Coach has sustained and will continue to sustain substantial injury.  Unless such acts or omissions are enjoined and restrained by this Court, Defendant Tier One Tutors will continue to infringe Ivy Coach's rights in their copyrighted works. Ivy Coach is entitled to preliminary and permanent injunctive relief.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff The Ivy Coach, Inc. prays for judgment against Defendants, and each of them, jointly and severally, as follows:

1. For damages in such amount as may be found, or as otherwise permitted by law;

2. For an accounting of, and the imposition of constructive trust with respect to, Defendants' profits attributable to their infringements of Ivy Coach's copyrights and other rights in and/or related to the Original Article;

3. For a preliminary and permanent injunction prohibiting Defendants, and their respective agents, servants, employees, officers, successors, licensees and assigns, and all persons acting in concert or participation with each or any of them, from continuing to infringe Ivy Coach's copyright in the Original Article, and related rights to the Original Article's Copyright Management Information;

4. For prejudgment interest according to law; and

5. For such other and further relief as the Court may deem just and proper.

Dated: June 30, 2017          KULIK GOTTESMAN SIEGEL & WARE, LLP

BY: _____
          Kirk Edward Schenck,
          Attorneys for The Ivy Coach, Inc.

1

## REQUEST FOR JURY TRIAL

2

3        Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff,

4    The Ivy Coach, Inc., requests a trial by jury.

5

6    Date: June 30, 2017

7

8                    KULIK GOTTESMAN SIEGEL & WARE, LLP

9

10

11                   BY: _____

12                        Kirk Edward Schenck,
                         Attorneys for The Ivy Coach, Inc.

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28